IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
WESTERN DIVISION
No. 5:13-CV-383-FL

| | |
|---|---|
| PATRICK BONDS, ) | |
| Plaintiff, ) | |
| ) | |
| ) | |
| v. ) | **MEMORANDUM AND** |
| ) | **RECOMMENDATION** |
| CAROLYN W. COLVIN, ) | |
| Commissioner of Social Security, ) | |
| ) | |
| Defendant. ) | |

This matter is before the court on the parties' cross motions for judgment on the pleadings [DE-20, DE-23] pursuant to Fed. R. Civ. P. 12(c). Plaintiff Patrick Bonds ("Claimant") filed this action pursuant to 42 U.S.C. § 405(g) seeking judicial review of the denial of his applications for a period of disability and disability insurance benefits. The time for filing responsive briefs has expired and the pending motions are ripe for adjudication. Having carefully reviewed the administrative record and the motions and memoranda submitted by the parties, the undersigned recommends denying Claimant's Motion for Judgment on the Pleadings, granting Defendant's Motion for Judgment on the Pleadings and upholding the final decision of the Commissioner.

### STATEMENT OF THE CASE

Claimant protectively filed an application for a period of disability and disability insurance benefits on July 13, 2007, alleging disability beginning February 23, 2007. (R. 9.) His claim was denied initially and upon reconsideration. (R. 9.) A hearing before Administrative Law Judge James G. Myles was held on March 4, 2010, at which Claimant was represented by counsel and a witness and a vocational expert ("VE") appeared and testified. (R. 9, 22-54.) On June 24, 2010, the ALJ issued a decision denying Claimant's request for benefits. (R. 9, 90-108.) On July

24, 2011, the Appeals Council remanded the claim to the ALJ for further administrative proceedings. (R. 9, 109-13.) A second administrative hearing before ALJ James G. Myles ("the ALJ") was held on December 12, 2011, at which Claimant was represented by counsel, and a vocational expert ("VE") appeared and testified. (R. 9, 55-87.) On February 3, 2012, the ALJ issued a decision denying Claimant's claims. (R. 6-21.) Claimant then requested a review of the ALJ's decision by the Appeals Council (R. 323-27), and submitted additional evidence as part of his request (R. 4.) After reviewing and incorporating the additional evidence into the record, the Appeals Council denied Claimant's request for review on April 11, 2013. (R. 1-5.) Claimant then commenced the instant action, seeking judicial review of the now final administrative decision.

## STANDARD OF REVIEW

The scope of judicial review of a final agency decision denying disability benefits under the Social Security Act, 42 U.S.C. §§ 301 *et seq*., ("Act") is limited to determining whether substantial evidence supports the Commissioner's factual findings and whether the decision was reached through the application of the correct legal standards. *See Coffman v. Bowen*, 829 F.2d 514, 517 (4th Cir. 1987). Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion; [i]t consists of more than a mere scintilla of evidence but may be somewhat less than a preponderance." *Craig v. Chater*, 76 F.3d 585, 589 (4th Cir. 1996) (quoting *Laws v. Celebrezze*, 368 F.2d 640, 642 (4th Cir. 1966)) (internal quotation marks and citation omitted) (alteration in original). "In reviewing for substantial evidence, [the court should not] undertake to re-weigh conflicting evidence, make credibility determinations, or substitute [its] judgment for that of the [Commissioner]." *Mastro v. Apfel*, 270 F.3d 171, 176 (4th Cir. 2001) (quoting *Craig*, 76 F.3d at 589) (internal quotation marks omitted) (first and second

alterations in original). Rather, in conducting the "substantial evidence" inquiry, the court determines whether the Commissioner has considered all relevant evidence and sufficiently explained the weight accorded to the evidence. *Sterling Smokeless Coal Co. v. Akers*, 131 F.3d 438, 439–40 (4th Cir. 1997).

## DISABILITY EVALUATION PROCESS

In making a disability determination, the Commissioner utilizes a five-step evaluation process. The Commissioner asks, sequentially, whether the claimant: (1) is engaged in substantial gainful activity; (2) has a severe impairment; (3) has an impairment that meets or equals the requirements of an impairment listed in 20 C.F.R. Part 404, Subpart P, App. 1; (4) can perform the requirements of past relevant work; and, if not, (5) based on the claimant's age, work experience and residual functional capacity can adjust to other work that exists in significant numbers in the national economy. *See* 20 C.F.R. § 404.1520; *Albright v. Comm'r of the Soc. Sec. Admin.*, 174 F.3d 473, 74 n.2 (4th Cir. 1999). The burden of proof and production during the first four steps of the inquiry rests on the claimant. *Pass v. Chater*, 65 F.3d 1200, 1203 (4th Cir. 1995). At the fifth step, the burden shifts to the Commissioner to show that other work exists in the national economy that the claimant can perform. *Id*.

When assessing the severity of mental impairments, the ALJ must do so in accordance with the "special technique" described in 20 C.F.R. §§ 404.1520a(b)-(c). This regulatory scheme identifies four broad functional areas in which the ALJ rates the degree of functional limitation resulting from a claimant's mental impairment(s): activities of daily living; social functioning; concentration, persistence or pace; and episodes of decompensation. *Id*. § 404.1520a(c)(3). The ALJ is required to incorporate into his written decision pertinent findings and conclusions based on the "special technique." *Id*. § 404.1520a(e)(3).

3

In this case, Claimant alleges the following errors by the ALJ: (1) improper assessment of Claimant's residual functional capacity ("RFC") (Pl.'s Mem. Supp. Pl.'s Mot. J. Pleadings ("Pl.'s Mem.") at 8-10); and (2) improper assessment of Claimant's credibility (Pl.'s Mem. at 10-11).

## FACTUAL HISTORY

### I. ALJ's Findings

Applying the above-described sequential evaluation process, the ALJ found Claimant "not disabled" as defined in the Act. At step one, the ALJ found that Claimant was no longer engaged in substantial gainful employment. (R. 11.) Next, the ALJ determined that Claimant had the following severe impairments: lumbar degenerative joint disease, right eye blindness, obstructive sleep apnea, obesity, an organic medical disorder, depression, an anxiety disorder, a personality disorder, and a substance addiction disorder. (R. 11-12.) The ALJ also found Claimant had the non-severe impairments of chronic gastro-esophageal reflux disease, hyperlipidemia, essential hypertension, a fatty liver, and residual symptoms of a remote right wrist fracture. (R. 12.) However, at step three, the ALJ concluded these impairments were not severe enough, either individually or in combination, to meet or medically equal one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1. (R.12-14.) Applying the technique prescribed by the regulations, the ALJ found that Claimant's mental impairments have resulted in moderate limitations in his activities of daily living, social functioning and concentration, persistence and pace with no episodes of decompensation. (R. 13.)

Prior to proceeding to step four, the ALJ assessed Claimant's RFC, finding Claimant had the ability to perform light work[1] with the following restrictions:

---

[1] Light work involves lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds. Even though the weight lifted may be very little, a

4

> [Claimant] is limited to only 30 minutes of standing and walking at a time before requiring a short rest break. In addition, [Claimant] is limited to frequent – not continuous – handling and fingering with his right upper extremity and should avoid concentrated exposure to hazardous conditions. Furthermore, he can only perform work requiring limited depth perception due to monocular vision, but this includes driving a motor vehicle. Finally, [Claimant] is restricted to simple, routine, repetitive tasks performed at a non-production pace in a setting requiring only occasional incidental social interaction with others.

(R. 14-15.) In making this assessment, the ALJ found Claimant's statements about his limitations partially credible. (R. 15-20.) At step four, the ALJ concluded Claimant did not have the RFC to perform the requirements of his past relevant work as a furniture salesperson, furniture mover, warehouse manager, and logistics support specialist. (R. 20.) Nonetheless, at step five, upon considering Claimant's age, education, work experience and RFC, the ALJ determined Claimant is capable of adjusting to the demands of other employment opportunities that exist in significant numbers in the national economy. (R. 20-21.)

## II. Claimant's Testimony at the Administrative Hearing

At the time of Claimant's administrative hearing, Claimant was 53 years old and unemployed. (R. 11, 20, 61.) Claimant is a high school graduate and attended approximately one year of college. (R. 61.) Claimant was last employed as a salesperson for ABC Mattress Company, where he worked for seven years and his duties included lifting and selling mattresses, managing the warehouse, and any other tasks that needed to be done. (R. 61-62, 74, 78-79, 266.) The job involved frequent lifting of 50-100 pound mattresses. (R. 78-79.) He left his job in August 2006 because a supervisor assaulted him while at work. (R.61.) He did not work

---

job is in this category when it requires a good deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls. To be considered capable of performing a full or wide range of light work, an individual must have the ability to do substantially all of these activities. If an individual can perform light work, he or she can also perform sedentary work, unless there are additional limiting factors such as the loss of fine dexterity or the inability to sit for long periods of time. 20 C.F.R. §§ 404.1567(b).

5

between leaving that job and the date of his alleged onset of disability. (*Id.*) Claimant's past work experience also includes more than 20 years in the Army as a logistics specialist, which involved ensuring that different units received proper equipment. (R. 73, 79-80, 266.) This position required only occasional lifting. (*Id.*)

Claimant explained that numerous medical conditions support his disability claim and his inability to work full-time. These medical conditions include lower back pain (R. 61-62, 74-75), right eye blindness (R. 62, 66, 76), head trauma resulting in memory loss (R. 62-63, 67-68), right wrist fracture (R. 64, 75-76), drug and alcohol addiction (R. 63, 69-70), depression (R. 70-72), and social anxiety (R. 72-73, 76-78).

Claimant testified that he is unable to work due to pain in his lower back. Specifically, he testified that the pain was intense enough to prevent him from performing the lifting activities that had been regular in his past jobs. (R. 61-62.) He describes the pain as constant and continuous (R. 74) and, without medication, about five on a pain scale of one to ten (R. 75). Claimant acknowledged that he can lift a fifteen-pound bag of grass clippings and carry it to the street (R. 65) and can lift the vacuum cleaner he keeps at home, which weighs about fifteen to twenty pounds (R. 76). He regularly takes medication for the pain in his back and it effectively alleviates the pain for about six hours. (R. 75.) The medication's side effects inhibit Claimant's ability to operate machinery or heavy equipment such that he is unable to take it when he needs to drive. (*Id.*) Claimant has also received shots in his lower back to help relieve the pain. (R. 74.)

Claimant also testified that the blindness in his right eye prevents him from working. He noted problems with depth perception, which is particularly problematic when driving at night. (R. 62.) Claimant also testified that reading can be painful because of his eye problems, forcing him to close his right eye so that he can effectively read with the left. (R. 66.) He described that

6

he can only see darkness and light in his right eye (R. 62), and that his peripheral vision is impaired (R. 76).

Claimant testified that he has experienced significant short-term memory loss following a motorcycle accident in February 2007. Claimant describes days where he takes his medications in the morning but by afternoon is unable to remember having done so. (R. 67-68.) This forces Claimant to skip his medications on days where he did not actually take his pills but cannot remember whether he has done so or not. (R. 68.) Claimant has experienced situations where he cannot remember where he is driving, forcing him to pull over and attempt to remember. (R. 67.) Claimant describes an inability to sit through a thirty-minute television program without forgetting details from earlier in the episode. (R. 68.)

Claimant testified that he experiences problems in his right wrist related to a fracture from twenty years ago but which has never fully recovered. Claimant is right-handed. (R. 64.) Claimant underwent bone graft surgery in the past but that surgery was apparently unsuccessful. (*Id*.) Doctors have recommended that Claimant undergo a second surgery to fuse together bones in his wrist, but Claimant had, at least up until the point of the hearing, declined the procedure. (*Id*.) Claimant says that on most days he experiences no problems, but about once a week he has trouble holding onto things in his right hand. (R. 75-76.) Some days, the problem is so intense that Claimant is unable to hold onto items as small as a pencil. (R. 64.)

Claimant noted a history with alcohol and drugs. Since his accident in 2007, however, he has consumed alcohol so infrequently that he cannot remember the last time he drank. (R. 69.) He has used marijuana once since the accident, but characterizes it as the result of having been in the wrong place at the wrong time. (R. 69-70.) Since that time, his drug screens have been consistently negative. (R. 70.)

7

Case 5:13-cv-00383-FL   Document 28   Filed 05/13/14   Page 7 of 16

Claimant has been depressed since his accident. He describes feeling sad and useless on a daily basis. (R. 70.) He had suicidal thoughts in 2007 but has not attempted to hurt himself since then. (R. 71.) He is on a number of different medications to treat the condition with varying degrees of success. (*Id.*) Doctors have changed his medications over the years to try to achieve better results. (R. 71-72.) The medications have the general result of making Claimant less upset about his feelings of sadness or worthlessness. (R. 71.)

Lastly, Claimant describes having social anxiety, preventing him from effectively relating to others in social situations. He participated in vocational rehabilitation in 2007 in an attempt to reenter the workforce. (R. 76.) Despite that training, he still experienced outbursts of temper and failed in three attempts at work placement in a convenience store. (R. 77.) Claimant says that he turned down the position because he did not want to have the interactions with customers that such a job would involve. (*Id.*) He also describes problems with supervisors, and stated that he needs any job directives to be clearly delineated. (*Id.*) Claimant has poor impulse control such that where he feels that a directive given him is stupid, he cannot refrain from saying so to his supervisor. (R. 78.) Claimant also has trouble adapting to changes in routine in the workplace. (*Id.*) Claimant does engage in minimal social interactions during any given week when running errands, but mostly does not leave his home. (R. 72-73.)

### III. Vocational Expert's Testimony at the Administrative Hearing

Julie Sawyer-Little testified as a vocational expert ("VE") at the administrative hearing. (R. 78-84.) After the VE's testimony regarding Claimant's past work experience (R. 80-81), the ALJ asked the VE to assume a hypothetical individual of the same age, education and prior work experience as Claimant and posed two hypothetical questions. First, the ALJ asked whether the individual could perform Claimant's past relevant work assuming the individual

would be limited to light exertion; could lift 20 pounds occasionally; ten pounds frequently; this person could sit, stand or walk for six hours each cumulatively during an eight hour work day but after 30 minutes of standing or walking would need a short rest break; this person . . . would be limited to frequent handling and fingering with the right upper extremity; this individual would have monocular vision, limited depth perception, but such that the individual could drive; no concentrated exposure to hazards; further limited to simple repetitive tasks; unskilled work; occasional interpersonal contact, incidental to the work, so no team work, but can interact with other people appropriately occasionally; routine with little, if any, change in work process; and no high output assembly line quota work, so a limited range of light exertion.

(R. 81.) The VE answered that a person with these limitations could not perform Claimant's past relevant work but would be able to perform other jobs that exist in significant numbers in both the local and national economies. (*Id.*) The ALJ then asked a second hypothetical changing the exertional level from light to medium, with frequent lifting of fifty pounds and occasional lifting of twenty-five pounds. (R. 82.) The VE answered that the individual would be able to perform those same jobs but would be unable to perform Claimant's past relevant work. (*Id.*)

Claimant's attorney built upon these hypotheticals by adding the additional variables of a problematic memory and social interaction issues. (R. 83-84.) The VE responded that the jobs she identified would require occasional interaction with supervisors and coworkers and would require the employee to maintain attention and concentration for up to two hours. (R. 84.) Finally, Claimant's attorney asked whether the hypothetical individual would be able to maintain competitive employment if he had to be absent from work one to two days per week because of mental health issues. (*Id.*) The VE answered that such an individual would be unable to maintain such employment. (*Id.*)

9

**DISCUSSION**

I.   **The ALJ's RFC Assessment**

Claimant first contends that the ALJ erred in assessing his RFC because he failed to account for Claimant's problematic memory. (Pl.'s Mem. at 8-10.) The ALJ determined that Claimant had the RFC to perform light work, as defined in 20 C.F.R. § 404.1567(b), with some limitations. Claimant argues that the assessment failed to account for his memory problems because the ALJ did not consider objective evidence suggesting that Claimant's memory condition was a result of his brain damage. (Pl.'s Mem. at 9.)

An individual's RFC is his capacity to perform "sustained work-related physical and mental activities in a work setting" despite the limitations caused by his physical and mental limitations. SSR 96-8p, 1996 WL 374184, at *1 (July 2, 1996); 20 C.F.R. § 404.1545(a)(1). In assessing a claimant's RFC, the ALJ will consider all relevant medical and other evidence in the record as well as descriptions of the claimant's limitations provided by the claimant or other witnesses. 20 C.F.R. § 404.1545(a)(3). In determining the severity of an individual's functional limitations, the ALJ shall consider the cumulative effect of the alleged ailments, even those which are not deemed to be severe. 42 U.S.C. § 423(d)(2)(B). "'Sufficient consideration of the combined effects of a plaintiff's impairments is shown when each is separately discussed in the ALJ's decision, including discussion of a plaintiff's complaints of pain and level of daily activities.'" *Baldwin v. Barnhart*, 444 F. Supp. 2d 457, 465 (E.D.N.C. 2005) *aff'd*, 179 F. App'x 167 (4th Cir. 2006) (quoting *Smith v. Chater*, 959 F. Supp. 1142, 1147 (W.D. Mo. 1997)). Where the ALJ fails to discuss relevant evidence weighing against his decision, remand is appropriate. *Ivey v. Barnhart*, 393 F. Supp. 2d 387, 390 (E.D.N.C. 2005) (citing *Murphy v. Bowen*, 810 F.2d 433, 438 (4th Cir. 1987)). The RFC assessment must include "a narrative discussion describing

10

how the evidence supports each conclusion" and "a discussion of why reported symptom-related functional limitations and restrictions can or cannot reasonably be accepted as consistent with the medical and other evidence."  SSR 96-8p, 1996 WL 374184, at *7.

Claimant's principal argument is that because the ALJ did not consider the objective evidence of his brain damage and Dr. Ramachindran's opinion that the brain damage was a result of his accident, the ALJ failed to properly consider all relevant evidence in making his RFC determination.  (R. 8-9, 818-22.)  Instead, argues Claimant, the ALJ placed undue weight on the opinion of Dr. Richard Gross, a non-examining medical consultant who concluded that Claimant's mood swings "are more likely due to substance use issues."  (Pl.'s Mem. at 9; R. 19, 749.) Claimant's biggest issue with Dr. Gross' findings is that he does not attribute many of Claimant's symptoms to brain damage (Pl.'s Mem. at 8; R. 749-754), but these findings do not appear to have affected Dr. Gross' findings with regard to Claimant's memory.  Dr. Gross rated Claimant's ability to understand and follow simple directives to be "good" while his ability to follow detailed instructions was "fair to poor."  (R. 752.)  Additionally, Dr. Gross rated Claimant's ability to remember very short and simple instructions as "good" and ability to understand and remember detailed instructions as "fair."  (*Id*.)  Those findings are in accord with Claimant's testimony that he needs simple and clear instructions in order to succeed (R. 77) and Dr. Ramachindran's determination that Claimant suffers from short-term memory problems (R. 818-22.)  While he disagrees with Dr. Ramachindran as to the source of these problems, Dr. Gross' findings comport with the record and testimony establishing that Claimant suffers from memory loss.

Further, the ALJ did consider Claimant's memory problems in making his RFC assessment, even if he did not expressly consider Dr. Ramachindran's findings.  (R. 15-16.)  The ALJ noted Claimant's testimony that he struggled to recall everyday events, what he reads, why he

11

entered rooms in his home, and where he was driving. (R. 15-16, 67-68.) He considered Claimant's testimony that he could not watch a thirty-minute television program without forgetting parts of it, that he would sometimes forget whether he had taken his medication, and that his accident was the onset of the memory problems. (R. 16, 62-63, 67-68.) The ALJ does not discredit that testimony as it is consistent with his RFC determination. In that determination, he included the restriction that Claimant is "restricted to simple, routine, repetitive tasks performed at a non-production pace." (R. 14-15.) Thus, the ALJ's failure to discuss Dr. Ramachindran's findings did not amount to a failure to consider Claimant's memory problems and, therefore, Claimant's objection fails.

## II.     The ALJ's Credibility Determination

Claimant next contends that the ALJ's credibility determination is not supported by substantial evidence. (Pl.'s Mem. at 10-11.) Specifically, Claimant takes issue with the ALJ's consideration of his daily activities, arguing that they are not sufficiently indicative of an ability to maintain competitive employment, and that Claimant's memory problems, rather than detracting from his credibility, instead bolster it. (*Id.*)

At step four of the sequential disability analysis, an ALJ must undertake a two-step credibility analysis to determine whether a claimant's subjective complaints of pain are in accord with objective medical evidence. *Craig*, 76 F.3d at 593-96; 20 C.F.R. §§ 404.1529(a)-(c); SSR 96-7p, 1996 WL 374186 at *1, 2 (July 2, 1996). First, the ALJ must find that the claimant has medically documented impairments that could cause his or her alleged symptoms. *Hines v. Barnhart*, 453 F.3d 559, 564 (4th Cir. 2006); SSR 96-7p, 1996 WL 374186, at *2. If the ALJ makes the step-one finding, he must then evaluate the extent to which the claimant's statements concerning the intensity and persistence of his symptoms are supported by the objective medical

12

record. *Hines*, 453 F.3d at 564-65; SSR 96-7P, 1996 WL 374186, at *2. If the ALJ does not find a claimant's statements to be credible, the ALJ must give specific reasons for so finding and those reasons must be supported by the evidence. 20 C.F.R. § 404.1529(c)(4); SSR 96-7P, 1996 WL 374186, at *2; *see also Hammond v. Heckler*, 765 F.2d 424, 426 (4th Cir. 1985) (stating that credibility determinations should refer to the evidence forming the basis for the conclusion). Because objective medical evidence may not capture the full extent of a claimant's symptoms, where the objective medical evidence and subjective complaints clash, the ALJ should consider any and all factors "concerning the individual's functional limitations and restrictions due to pain and other symptoms." SSR 96-7P, 1996 WL 374186, at *3 (complete list of factors included).

Here, the ALJ made the step-one finding that Claimant's medically determinable impairments could reasonably be expected to cause his alleged symptoms. (R. 15.) The ALJ then determined that Claimant's statements concerning the intensity, persistence, and limiting effects of his symptoms were not credible to the extent they differed from the RFC assessment. (*Id.*) The ALJ gave a number of specific reasons for failing to credit Claimant's testimony in that regard – routine and conservative treatment for his symptoms and infrequent visits to doctors; daily activities such as driving, shopping, and watching television; Claimant's admissions that he could perform other jobs and attempts to secure employment after the date of onset; and inconsistencies in Claimant's testimony. (R. 17.) Claimant argues that two of the ALJ's reasons – Claimant's daily activities and inconsistent statements – are not supported by substantial evidence and, therefore, the credibility assessment was not proper.

The ALJ's assessment of Claimant's daily activities is supported by substantial evidence. Claimant testified he could care for his basic hygiene without assistance (R. 17, 66), drive a car (R. 17, 62, 64, 65-66), shop in stores (R. 17, 72-73), read (R. 17), and watch television (R. 17, 66).

13

Claimant takes issue with his ability to read because of his inability to remember everything he reads and trouble remembering details from thirty-minute television programs. (Pl.'s Mem. at 10.) Those considerations are weighed and accounted for in Claimant's RFC determination – the ALJ specifically limited Claimant only to work involving simple instructions and repetitive activity at a slow pace. (R. 14-15.) Claimant further argues that he does not engage in grocery shopping because he struggles to stand for lengths of time. (Pl.'s Mem. at 10.) The ALJ's finding in this regard is supported by Claimant's testimony that he goes to the grocery store or runs errands, though he attempts to limit their frequency to once every other day in order to avoid prolonged social interaction. (R. 73.) While the ALJ found this testimony inconsistent with Claimant's assertion that he is unable to work, the ALJ did account for Claimant's social functioning limitations in the RFC determination by limiting Claimant's interaction with supervisors and coworkers. (R. 15.) Finally, Claimant argues that these activities are so undemanding that they do not show that he can work on a daily basis. That argument fails, however, because those activities directly relate to findings incorporated into the ALJ's RFC assessment, as discussed above. Further, other activities not specifically discussed by Claimant but considered by the ALJ constitute further evidence of his ability to work. For example, Claimant noted that he is able to lift a fifteen-pound bag of grass clippings and carry it to the street (R. 65) and can lift his fifteen- to twenty-pound household vacuum cleaner. (R. 76.) Overall, the ALJ's consideration of Claimant's daily activities is supported by substantial evidence and is not grounds for remand.

Next, Claimant asserts the ALJ erred in determining Claimant was not credible because Claimant's statements concerning matters relevant to the issue of disability were inconsistent. The ALJ explained Claimant's inconsistencies, stating:

14

> The claimant first testified that the most he has driven at one time since his accident was fifteen minutes, but later he said he drove himself to the hearing and it took about twenty minutes. He also testified initially that his vision in his right eye is limited to distinguishing between light and dark, but he later testified that double vision in his right eye makes it difficult to read.

(R. 17.) The undersigned finds no inconsistency in Claimant's statements concerning his vision loss, but the record indicates that the ALJ appropriately credited Claimant's statements concerning his vision. Both Dr. Alan Cohen, a consultative medical examiner, and Dr. R. Thomas Barowsky, a consultative ophthalmologic examiner, noted "right eye blindness" and "total visual field loss" respectively. (R. 424-26, 437-39.) The ALJ considered this evidence and accepted Claimant's vision loss in the RFC, finding that Claimant "can only perform work requiring limited depth perception due to monocular vision." (R. 14.)

As to the alleged inconsistency in Claimant's estimation of the greatest distance he has driven since his motorcycle accident, the undersigned finds the five-minute discrepancy noted by the ALJ insufficient to support a finding that Claimant's testimony was inconsistent. Nevertheless, the ALJ's finding in this regard was harmless. *See Morgan v. Barnhart*, 142 F. App'x 716, 729 (4th Cir. 2005) (recognizing the harmless error doctrine within the social security context). The ALJ found Claimant partially credible, giving full credit to Claimant's statements concerning his mental condition, but not giving credit to his statements concerning physical impairments that were not supported by the record as a whole. The ALJ properly accounted for Claimant's vision loss in the RFC, and the jobs put forth by the VE do not involve driving. (R. 21.) Thus, there is no reasonable probability that the ALJ's decision would have been different had he found no inconsistency in Claimant's statements concerning his ability to drive.

15

## **CONCLUSION**

For the reasons stated above, the undersigned RECOMMENDS that Claimant's Motion for Judgment on the Pleadings [DE-20] be DENIED, Defendant's Motion for Judgment on the Pleadings [DE-23] be GRANTED and the final decision of the Commissioner be AFFIRMED.

The Clerk shall send copies of this Memorandum and Recommendation to counsel for the respective parties, who shall have fourteen (14) days from the date of service to file written objections. Failure to file timely, written objections shall bar an aggrieved party from receiving de novo review by the District Judge on an issue covered in the Memorandum and Recommendation and, except upon grounds of plain error, from attacking on appeal the proposed factual findings and legal conclusions not objected to, and accepted by, the District Judge.

This 13th day of May 2014.

_____
KIMBERLY A. SWANK
United States Magistrate Judge